IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division


MARLIN MAURICE DUMAS,

     PETITIONER,

v.                                      CIVIL ACTION NO. 2:13-cv-398

HAROLD W. CLARKE, Director
Virginia Department of Corrections,

     RESPONDENT.


## REPORT AND RECOMMENDATION

Before the Court is the petitioner Marlin Maurice Dumas' petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 ("the petition"), ECF No. 1, and the Respondent's motion to dismiss, ECF No. 5. Dumas, by counsel, filed an opposition to the motion to dismiss, ECF No. 8. The motion to dismiss was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), E.D. Va. Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned disposes of the motion to dismiss on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and E.D. Va. Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** the Respondent's motion to dismiss, ECF No. 5, be **GRANTED** and Dumas' petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. STATEMENT OF THE CASE

On May 19, 1997, Dumas, who was 17 years old at the time of the offense, pled guilty in the Circuit Court for the City of Norfolk ("the trial court") to capital murder, malicious wounding, two counts of robbery, and two counts of abduction. On July 18, 1997, the trial court sentenced him to life in prison without parole for the capital murder conviction, plus a total of 50 years in prison for the other five convictions. Dumas did not directly appeal the conviction. On July 15, 1999, Dumas filed a Motion to Set Aside the Judgment, arguing that the trial court lacked jurisdiction to try him as an adult because neither parent of Dumas had been served notice of his transfer hearing from juvenile court to circuit court. The motion was denied on February 11, 2000. The denial was initially appealed, but later withdrawn. Dumas then filed a petition for writ of habeas corpus to the Supreme Court of Virginia on May 24, 2000, again arguing that the trial court lacked jurisdiction to try him as an adult because neither parent of Dumas had been served notice of his transfer hearing. The petition was refused on December 7, 2000.

On January 2, 2002, Dumas filed a federal writ of habeas corpus, his first, asserting a violation of due process stemming from the lack of notice previously mentioned, ineffective assistance of counsel, and emergence of new evidence regarding his guilty plea. Under 28 U.S.C. § 2244(d)(1)(A), a state prisoner is required to file his federal habeas petition within one year of the date the judgment became final. Dumas' conviction became final on August 18, 1997. Dumas filed his federal petition filed on January 2, 2002, well outside the one year time-frame in which he was entitled to file his habeas petition. As a result, this Court dismissed the petition as time-barred on October 24, 2002.

Dumas subsequently filed a Mandamus to the Supreme Court of Virginia on March 31, 2008, propounding the same due process argument previously mentioned. On July 7, 2008, the

Mandamus was refused. Dumas filed a second petition for a writ of habeas corpus to the Supreme Court of Virginia on April 8, 2011, challenging the severity and constitutionality of his sentence under *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005). The Supreme Court of Virginia dismissed the petition as successive and time-barred on August 12, 2011.

On June 25, 2012 the United States Supreme Court held in *Miller v. Alabama*, 132 S. Ct. 2455 (2012) that mandatory sentences of life without parole for homicide offenses committed by juveniles, which do not allow the trial court to give individualized consideration to the characteristics of the juvenile defendant, are unconstitutional. On June 25, 2013, the petitioner, by counsel, filed a motion seeking authorization from the United States Court of Appeals for the Fourth Circuit to file a second federal habeas petition in this Court, in light of the Supreme Court's ruling in *Miller*. The Fourth Circuit granted the motion and gave authorization to file on July 11, 2013. Dumas subsequently filed the present habeas petition on July 19, 2013, alleging that his life sentence is unconstitutional.

The present habeas petition, like the prior habeas filed on January 2, 2002, was filed well outside the one-year statutory window. However, the petitioner argues that the present filing falls within an exception that permits untimely filings. Under 28 U.S.C. § 2244(d)(1)(c), untimely filings may be excused if the petitioner files within one year of the date the United States Supreme Court announced a newly recognized right made retroactively applicable to cases on collateral review. Dumas' sole claim for habeas relief is that the rule in *Miller* is retroactively applicable because it is a new substantive rule or, alternatively, it is a new "watershed rule" of criminal procedure. On October 29, 2013, the Virginia Attorney General, on behalf of Respondent, filed a motion to dismiss the present claim, a Rule 5 answer, and a brief in support

of the motion to dismiss, to which Dumas replied on November 22, 2013. As the motion to dismiss is fully briefed, the matter is now ripe for a recommended disposition.

## II. DISCUSSION

### A. Dumas' claim is unexhausted, but excused, pursuant to 28 U.S.C. § 2254(b)(1)(B), because there is no available avenue of state habeas relief.

In general, a state prisoner who seeks federal habeas relief must first demonstrate that he exhausted his claims in the Virginia state courts. 28 U.S.C. § 2254(b)(1)(A); *see also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) ("The burden of proving that a claim is exhausted lies with the habeas petitioner.") (citation omitted). Exhaustion of state court remedies is a threshold issue that the Court must address before turning to the merits of Dumas' petition, *Day v. McDonough*, 547 U.S. 198, 205 (2006), the purpose of which is to ensure that state courts had a full opportunity to resolve federal constitutional claims before such claims are brought in federal court. *Rose v. Lundy*, 455 U.S. 509, 518 (1982); *see also Ex parte Royall*, 117 U.S. 241, 250 (1886) (discussing exhaustion as a matter of comity, not of jurisdiction). "[T]he exhaustion requirement is satisfied so long as a claim has been 'fairly presented' to the state courts." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

However, "[b]ecause the rule of exhaustion is one of comity and not of jurisdiction, it is to be applied with flexibility." *Patterson v. Leeke*, 556 F.2d 1168, 1170 (4th Cir. 1977) ("When the state's procedural machinery is rendered ineffective by overly sophisticated technicalities and self-imposed limitations, the federal court should not feel compelled to abstain.") (quoting *Hunt v. Warden*, 335 F.2d 936, 940-41 (4th Cir. 1964)). A federal habeas petitioner is excused from the exhaustion requirement if "(i) there is an absence of available State corrective process; or (ii)

4

circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

Dumas' claim under *Miller* is unexhausted because it has not been presented to the Supreme Court of Virginia, either on direct appeal or collateral review. Dumas did not directly appeal the judgment of conviction rendered in the trial court. Therefore, Dumas' July 18, 1997 judgment of conviction became final thirty days later on August 18, 1997, when the time to file a direct appeal from the trial court expired. *See* Va. Sup. Ct. R. 5:17(a)(2); *see also Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Having determined that Dumas can no longer pursue this claim on direct review, it must next be evaluated whether the claim is eligible to be addressed in a state habeas proceeding on collateral review. Under Virginia law, a habeas petition challenging a conviction or sentence other than death must "be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code § 8.01-654(A)(2). Accordingly, under Virginia law, Dumas had until July 18, 1999, or two years from the date of final judgment in the trial court, to file a state habeas petition challenging his conviction or sentence. Va. Code § 8.01-654(A)(2). Therefore, if Dumas attempted to file a state habeas petition now, it would be dismissed as outside the statute of limitations.

However, despite having not exhausted his claims in state court, Dumas may still have the opportunity for federal habeas review. Under 28 U.S.C. §§ 2254(b)(1)(B)(i)-(ii), a petitioner is permitted to seek a writ of habeas corpus in federal court when state exhaustion is not actually

or practically available.  As previously stated, Dumas would not be able to bring the present claims to state court for direct or collateral review, and therefore, state exhaustion is not actually or practically available.  As a result, the Court would find that Dumas' unexhausted *Miller* claim now before the Court is excused, pursuant to 28 U.S.C. § 2254(b)(1)(B), because there is no available avenue of state habeas relief.   *See Johnson v. Ponton*, No. 3:13-cv-404, 2013 WL 5663068, at * 3 (E.D. Va. Oct. 16, 2013).

**B. Dumas' petition was filed more than one year after the United States Supreme Court issued its decision in *Miller*.**

Under the Anti-Terrorism and Effective Death penalty Act ("AEDPA"), there is a one-year statute of limitations period for state prisoners seeking federal habeas relief pursuant to 28 U.S.C. § 2254.   The petitioner must file the federal petition no more than one year after the latest of: (i) the date judgment becomes final; (ii) any state-created impediment to filing is removed; (iii) the United States Supreme Court recognizes the constitutional right asserted; or (iv) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). Dumas argues that *Miller* established a new constitutional right retroactively applicable to cases on collateral review. *Miller* was decided on June 25, 2012.  As such, Dumas was required to file his federal habeas petition by June 25, 2013, one year after *Miller* was decided.

However, Dumas previously filed a federal habeas petition in this Court on January 2, 2002, which was subsequently dismissed in October of 2002.  Second or "successive" habeas corpus petitions that present a claim not presented in the original petition shall be dismissed, unless "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A).  However, "*[b]efore* a second or successive application permitted by

this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A) (emphasis added). Accordingly, under AEDPA, Dumas was required to seek authorization, or permission, from the United States Court of Appeals for the Fourth Circuit to file a "successive" federal habeas petition *before* he filed the instant petition. *Id.* Dumas complied with this statutory requirement by filing his request for authorization with the Fourth Circuit on June 25, 2013, exactly one year after *Miller* was decided. The Fourth Circuit granted Dumas' request on July 11, 2013 and authorized the successive filing. *See* ECF No. 3, attach. 1 at 2. Subsequently, on July 19, 2013, Dumas filed the instant petition now before the Court. ECF No. 1.

It is undisputed that the July 19, 2013 filing is outside the one-year period prescribed by AEDPA under 28 U.S.C. § 2244(d)(1)(c). *Miller* was decided on June 25, 2012, and thus, Dumas' petition must have been filed in this Court by June 25, 2013. Respondent argues that Dumas' petition should be dismissed as time-barred on this basis alone. ECF No. 7 at 3-5. Recognizing this, Dumas argues that his petition nevertheless was timely because by June 25, 2013, he had filed his motion seeking authorization from the Fourth Circuit to file a successive habeas petition, and moreover, had attached an "exact copy" of his petition to the filing in the Fourth Circuit. [1] ECF No. 8 at 2. Accordingly, this case raises the interesting issue of whether the filing of a motion in the court of appeals seeking authorization to file a successive habeas petition in the district court tolls the one-year limitation period under AEDPA. *Compare Fierro v. Cockrell*, 294 F.3d 674, 680 (5th Cir. 2002) ("[A] motion for authorization to file a successive

---

[1] Dumas' counsel further argues that in filing the motion for authorization with the Fourth Circuit, counsel "acted reasonably and in good faith to timely assert Dumas' *Miller* claim" in this Court by contacting the Clerk of this Court regarding the procedures for filing successive 2254 habeas petitions. *See* ECF No. 8 at 4 (citing attach. 1 and 2, sworn affidavits of counsel). While the Clerk of Court is not tasked with providing legal advice to counsel or parties, the Court does recognize counsel's efforts in attempting to timely file this habeas petition.

petition is not itself an 'application for a writ of habeas corpus.' As a consequence, the filing of such a motion does not satisfy the one-year statute of limitations under AEDPA."), *with Easterwood v. Champion*, 213 F.3d 1321, 1324 (10th Cir. 2000) ("However, this period was further tolled during the twenty-three days that Mr. Easterwood's request to file a successive habeas petition was pending before this court.").

The Fourth Circuit has not answered this exact question, although it recently provided guidance, which is instructive for this Court's determination. A federal prisoner serving mandatory life in prison for a drug conspiracy he participated in while he was, for at least part of the conspiracy, seventeen years old, sought authorization from the Fourth Circuit to file a successive motion to attack his federal sentence in the district court pursuant to 28 U.S.C. § 2255—the habeas corpus statute for federal prisoners—arguing, albeit erroneously, that the *Miller* decision was a new rule of law that retroactively applied to his case on collateral review. *In re Vassell*, --- F.3d ---, No. 13-284, 2014 WL 1779039 (4th Cir. May 6, 2014).[2] The authorization statute for federal prisoners to file successive motions under 28 U.S.C. § 2255 "incorporates the prefiling authorization procedure established in § 2244 for state prisoners' second or successive habeas corpus applications." *Id.* at *2. Thus, the court of appeals may authorize both federal and state prisoners to file a successive habeas petition in the district court, if "as relevant here, that application presents a claim that 'relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" *Id.* (citing 28 U.S.C. §§ 2244(b)(3)(C), (b)(2)(A)).

Vassell filed his motion in the Fourth Circuit seeking authorization to file a successive

---

[2] In this decision the Fourth Circuit notes that the federal government conceded that *Miller* established a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. *Id.* at *2. However, the Fourth Circuit did not reach that same conclusion, nor was it addressed, and the Respondent does not make the same concession in this case.

2255 petition based on *Miller* on June 24, 2013, almost one year after the Supreme Court decided *Miller* on June 25, 2012. *Id.* at *1 ("Within one year of that decision, on June 24, 2013, Vassell filed this motion under § 2255(h), seeking authorization to file a successive § 2255 motion that claims reliance on *Miller* as a 'new rule of constitutional law.'") (citing 28 U.S.C. § 2255(h)(2)). First, the Fourth Circuit concluded that Vassell's reliance on *Miller*, which issued a new rule regarding juvenile homicide offenders, was misplaced as a matter of law, because Vassell was convicted of a non-homicide offense. *Id.* at *4 ("In short, regardless of how Vassell argues his claim, he cannot justify further exploration of it by a district court. The proposition remains fixed as a matter of law that he could have made his claim based on the rule in *Graham*, which became available to him two years earlier. *Miller* simply does no work for a nonhomicide offender such as Vassell, and it therefore cannot serve to restart the 1-year limitation period that applies to Vassell's proposed claim."). Thus, as a matter of law, the Fourth Circuit considered Vassell's authorization request based on the rule in *Graham*, not *Miller*. The Court did not end its analysis there, however, and went on to address the timeliness of Vassell's request for authorization, even though Vassell argued "that any consideration of the statute of limitation is premature at this stage when we are applying only the standard applicable for *authorizing* a successive § 2255 motion." *Id.* The Fourth Circuit did not agree, because the Government raised it as a defense.

The Fourth Circuit acknowledged that in considering a § 2555(h) request for authorization, it does not consider the merits of the claim, but only whether the movant has satisfied the necessary prima facie showing under § 2244(b)'s requirements—here, reliance "on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." However, the statutory framework "does not provide that such a showing is *sufficient* for receiving prefiling authorization." *Id.* (emphasis in original).

Rather, even though the Fourth Circuit's primary consideration goes to the showing of the necessary prima facie burden under § 2244(b), it is not required "to ignore other considerations and authorize the filing of a successive § 2255 motion that, for instance, would clearly be time-barred. The statue, we conclude, simply does not require such an exercise in futility." *Id.*

In denying Vassell's motion to file a successive § 2255 "because the motion would be untimely," *id.* at *5, the Fourth Circuit also recognized that in addressing authorization requests for successive petitions, "timeliness" of the request need not always be reached for various reasons. *Id.* ("In many cases, the record might not be adequately developed to enable us to resolve disputed factual issues or to determine whether equitable tolling should apply. We also recognize that it would be inappropriate to deny authorization based on a finding that the successive § 2255 motion would be time-barred without according the parties fair notice and an opportunity to present their positions on whether the limitation period has elapsed.") (internal quotation marks and citations omitted). Ultimately, because Vassell's request was properly framed under *Graham*, and because *Graham* was decided in 2010 but Vassell did not file this request until June 24, 2013, the request was denied as untimely.

Here, because the effect of filing a motion seeking authorization from the Fourth Circuit to file successive petitions has not been explicitly decided by the Fourth Circuit, as it has by the Fifth and Eleventh Circuits, the timeliness issue is not as "clear" as it was in *Vassell*. Indeed, the Fourth Circuit authorized the filing of Dumas' second petition now before the Court on July 11, 2013, even though the motion seeking such authorization was filed on June 25, 2013, the date his petition was due, one year after *Miller* was decided. ECF No. 3, attach. 1 at 2. The Fourth Circuit granted this request 16 days after filing, which is within the time prescribed by statute. *See* 28 U.S.C. § 2244(b)(3)(D) ("The court of appeals shall grant or deny the authorization to file

a second or successive application not later than 30 days after the filing of the motion."). But, somewhat surprisingly, Dumas did not attach that authorization to his original petition, filed in this Court on July 19, 2013. It was only after Dumas filed his petition and was ordered by this Court to show authorization from the Fourth Circuit did he file such authorization.

Regardless, the plain language of the statute states: "*Before* a second or successive application permitted by this section *is filed in the district court*, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). This suggests that Dumas acted appropriately, in filing the motion in the Fourth Circuit before he filed his petition in this Court. However, the fact also remains that Dumas' petition was not filed in this district court within one-year from "the date on which the constitutional right asserted was initially recognized by the Supreme Court . . . ." 28 U.S.C. § 2244(d)(1)(C). Instead of asking the Clerk of Court for legal advice on June 21, 2013, *see* ECF No. 8, attach. 1 at ¶ 4, attach. 2 at ¶¶ 6-11, counsel for Dumas was better advised to take earlier necessary action to comply with the plain language of the controlling statutes.

"[The Fourth Circuit] ha[s] held that the AEDPA statute of limitations is subject to equitable tolling." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (citing *Harris v. Commonwealth*, 209 F.3d 325, 330 (4th Cir. 2000)). In the event his filing in the Fourth Circuit did not toll the statute of limitations period, Dumas contends that he is entitled to this equitable remedy. Specifically, to be entitled to equitable tolling of the statute of limitations period, Dumas must demonstrate (1) that he pursued his rights diligently, and (2) that some extraordinary circumstance stood in his way that prevented timely filing. *Holland v. Florida*, 130 S. Ct. 2549 (2010). Assuming that Dumas is considered to have satisfied the first criteria and pursued his rights diligently, the question remains as to whether "some extraordinary

circumstance" stood in the way to prevent his timely filing.

As stated previously, the Fourth Circuit has not decided this precise issue, but it has held that "a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding." *See Rouse*, 339 F.3d at 248 (4th Cir. 2003) (quoting *Harris*, 209 F.3d at 331). On the other hand, giving Dumas the benefit of the doubt, counsel's reliance on the Tenth Circuit's *Easterwood* holding—that the statute of limitations is tolled during the pendency of a petitioner's request in the appellate court for authorization to file a successive habeas petition—as opposed to the Fifth Circuit's determination in *Fierro* that it is not, especially where the Fourth Circuit has not opined on this issue, may not necessarily be considered "a mistake . . . in interpreting a statute of limitations." *Rouse*, 339 F.3d at 248.

Regardless, this Court need not decide whether Dumas' authorization filing in the Fourth Circuit tolled the one-year statute of limitations. Even if the Court accepted Dumas' argument, that his filing in the Fourth Circuit did toll the limitations period making his petition "timely," or in the alternative that the statute of limitations should be equitably tolled pursuant to the "extraordinary circumstances" test in *Rouse* due to counsel's good faith effort, this Court has previously held that the new rule in *Miller* is not retroactively applicable to cases before the Court on collateral review, because it is not a substantive rule, nor is it a watershed rule of criminal procedure. Therefore, even assuming Dumas' deadline to file in this Court was tolled so as to allow the tardy filing, his petition is nonetheless barred by the one-year statute of limitations period under AEDPA.

**C. Even if Dumas' petition was filed in this Court within one year of the *Miller* decision, the new rule announced in *Miller* is not retroactively applicable to cases on collateral review, and therefore Dumas' petition should be dismissed.**

Newly announced rules by the U.S. Supreme Court apply retroactively to all criminal cases pending on direct review at the time of the announcement. *Teague v. Lane*, 489 U.S. 288, 303-305 (1989) (plurality opinion); *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) ("When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review.") (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). This is not so for convictions that are already final; the new rule "applies only in limited circumstances" to criminal cases on collateral review. *Summerlin*, 542 U.S. at 351. As an initial matter, new "substantive" rules apply retroactively to cases on collateral review. *Teague*, 489 U.S. at 311; *Summerlin*, 542 U.S. at 351-52. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms . . . as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Summerlin*, *supra*, at 351-52 (citing *Bousley v. United States*, 523 U.S. 614, 620-21 (1998); *Saffle v. Parks*, 494 U.S. 484, 494-95 (1990); *Teague*, 489 U.S. at 311). New rules classified as substantive "apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose on him." *Summerlin*, *supra*, at 352 (citing *Bousley*, *supra*, at 620 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974))) (internal quotations omitted).[3]

However, under *Teague*, and subsequently, *Summerlin*, a prisoner whose conviction is final generally cannot benefit from a new *procedural* ruling. *Summerlin*, 542 U.S. at 352 (emphasis added). This is because new procedural rules "do not produce a class of persons

---

[3] Under *Teague*, this was referred to as an exception to the bar on retroactive application of procedural rules, but is now "more accurately characterized as substantive rules not subject to the bar." *Summerlin*, *supra*, at 352 n.4.

convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* Accordingly, new procedural rules will only apply retroactively to prisoners on collateral review if the new procedural rule is a "watershed rule of criminal procedure [that] implicat[es] the fundamental fairness and accuracy of the criminal proceeding." *Id.* (citing *Saffle*, *supra*, at 495 (quoting *Teague*, 489 U.S. at 311)). "This class of rules is extremely narrow, and 'it is unlikely that any . . . has yet to emerge.'" *Summerlin*, *supra*, at 352 (citing *Tyler v. Cain*, 533 U.S. 656, 667 n.7 (2001) (quoting *Sawyer v. Smith*, 497 U.S. 227, 243 (1990))) (internal quotations omitted). "In providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of *Gideon v. Wainwright*, 372 U.S. 335 (1963) (right to counsel), and only to this rule." *Beard v. Banks*, 542 U.S. 406, 417 (2004) (citing *Saffle*, *supra*, at 495; *Gilmore v. Taylor*, 508 U.S. 333, 364 (1993) (Blackmun, J., dissenting)). Accordingly, "it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception." *Beard*, 542 U.S. at 417.

To determine whether a new rule applies retroactively to a petitioner's conviction on collateral review, *Teague* sets forth a three-step approach for federal courts to follow: first, determine the date petitioner's judgment of conviction became final; second, ascertain whether the rule announced by the Supreme Court is new; and third, decide whether one of the two exceptions apply, i.e. whether the new rule is substantive, or whether it is a "watershed" rule of criminal procedure. *See Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (additional citations omitted). Here, first, Dumas' conviction became final on August 18, 1997, when the time to file a direct appeal to the Court of Appeals of Virginia expired. *See* Va. Sup. Ct. R. 5:17(a)(2); *see also Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a

judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). Accordingly, his judgment became final long before the Supreme Court decided *Miller* on June 25, 2012, and thus any new rule announced in *Miller* will not be applicable to his case on collateral review unless it falls within an exception. *Teague, supra*, at 310-11.

Second, the rule announced in *Miller* is a "new rule" as discussed in *Teague* and *Summerlin*, and as contemplated by 28 U.S.C. § 2244(d)(1)(c). *See, e.g., Nebraska v. Mantich*, -- - N.W.2d ---, 287 Neb. 320, 331 (Neb. 2014). "A new rule is defined as a rule that . . . was not '*dictated* by precedent existing at the time the defendant's conviction became final.'" *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citing *Saffle v. Parks*, 494 U.S. 484, 488 (1990) (quoting *Teague*, 489 U.S. at 301)) (emphasis in original). The *Miller* rule was not dictated by cases or precedent that existed at the time Dumas' conviction became final in 1997. Rather, *Miller* relied heavily on *Graham*, decided in 2010, *Kennedy*, decided in 2008, and *Roper*, decided in 2005; all three decisions occurred after Dumas' conviction became final. Accordingly, the Supreme Court in *Miller* announced a new rule that will only apply retroactively to Dumas, who is before the Court on collateral federal habeas review, if the new rule is substantive, or a "watershed" rule of criminal procedure, as discussed more fully below. *See Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004). The Court would find that the *Miller* rule does not constitute a substantive rule or a watershed procedural rule. Accordingly, the *Miller* rule should not be applied retroactively to cases on collateral review, and therefore, Dumas' petition should be dismissed as time-barred.

### 1. The new rule announced in *Miller v. Alabama*.

In *Miller v. Alabama*, the Supreme Court held that the Eighth Amendment forbids sentences of non-discretionary, mandatory life imprisonment without the possibility of parole for

individuals who were under the age of 18 years old at the time they committed homicide. 132 S. Ct. 2455. Although the Court did not categorically bar the punishment of life imprisonment without parole for minors, it determined that the sentencing court must consider the offending minor's age and youthful characteristics before imposing such a sentence. *Id.* at 2467, 2471. Concerned mainly with proportionality of punishment, the Court looked to two lines of precedent to reach this result. *Id.* at 2463. The first line of cases held the Eighth Amendment bar against cruel and unusual punishment categorically banned sentencing practices due to mismatched culpability of a class of offenders and the severity of the penalty imposed. *Id.* (citing *Graham v. Florida*, 560 U.S. 48, 61-62 (2010) (holding unconstitutional a sentence of life imprisonment without parole for a minor who committed a non-homicide offense); *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding the execution of mentally retarded defendants unconstitutional); *Roper v. Simmons*, 543 U.S. 551 (2005) (holding the execution of individuals who were under 18 years of age at the time of their capital crimes unconstitutional); *Kennedy v. Louisiana*, 554 U.S. 407 (2008) (holding unconstitutional the death penalty for non-homicide offenses)). From these cases, the Supreme Court announced that "children are different," and thus, "distinctive attributes of youth" such as lack of maturity, underdeveloped sense of maturity, recklessness, impulsivity, and risky behavior "diminish the penological justifications" for sentencing juveniles to life imprisonment without the possibility of parole, "even when they commit terrible crimes." *Miller*, 132 S. Ct. at 2464-65.

Second, the Court discussed the necessity of the sentencing court to consider the characteristics of a defendant, and the details of the offense, before determining the appropriateness of life imprisonment without parole. *Id.* at 2465-68. Most notably, when discussing *Graham*, the Supreme Court analogized the importance of the sentencing court's

ability to recognize the "mitigating qualities of youth," which it cannot do when such a sentence is mandatory. *Id.* at 2467-68. Ultimately, the Court extended the rationale from *Graham*, and found that "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.* at 2469. Therefore, the Court held such mandatory sentences unconstitutional, and required the sentencing court to consider the defendant's "youthful characteristics" when fashioning a sentence. *Id.*

Two appellant petitioners were before the Supreme Court: Evan Miller—who was convicted of capital murder committed when he was fourteen years old and sentenced to life in prison without possibility of parole—was before the Court on direct appeal from the Alabama Court of Criminal Appeals, which affirmed his conviction and sentence. *Miller v. State*, 63 So.3d 676 (Ala. Crim. App. 2010), *cert. denied*, No. 1091663 (Ala. Oct. 22, 2010). Kuntrell Jackson—who was convicted of capital felony murder and aggravated robbery also committed at the age of fourteen years old and sentenced to life in prison without the possibility of parole— was before the Court on collateral review, after the Arkansas Supreme Court affirmed the dismissal of his state habeas petition by the Arkansas Circuit Court. *Jackson v. Norris*, 378 S.W.3d 103 (Ark. 2011). Both the judgment of the Alabama Court of Criminal Appeals, or Miller's direct appeal from his judgment of conviction and sentence, and the judgment of the Arkansas Supreme Court, or Jackson's state habeas and collateral review, were reversed and remanded for proceedings consistent with the Supreme Court's opinion. *Miller*, 132 S. Ct. at 2475. Thus, when considering the retroactivity issue, lower courts ask whether the Supreme Court's indistinguishable application of the *Miller* rule to both petitioners (one on direct review, one on collateral review) is determinative, persuasive, or inconclusive.

In addition to this issue, lower courts must also decide whether the rule in *Miller* is substantive or procedural, and if procedural, whether it can be considered a "watershed" rule of criminal procedure to overcome the general rule that new procedural rules do not retroactively apply to cases on collateral review. Dumas argues that the *Miller* rule applies retroactively to his case on collateral review as a new substantive rule, or alternatively as a new "watershed" rule of procedure. ECF No. 8 at 7-10. The Court does not agree with either proposition.

### 2. The Supreme Court did not explicitly hold that *Miller* is retroactive.

Before the Court discusses *Miller* under the *Teague* analysis, as an initial matter, a new rule is not "made retroactive to cases on collateral review" unless the Supreme Court holds it to be retroactive. *Tyler v. Cain*, 533 U.S. 656, 663 (2001); *see also United States v. Mathur*, 685 F.3d 396, 401 (4th Cir. 2012) ("The only way to make a new rule retroactive 'is through a holding,' not through dictum.") (quoting *Tyler*, *supra*, at 663-64). The Supreme Court has not held *Miller* is retroactive on collateral review. *See, e.g., In re Morgan*, 713 F.3d 1365, 1367 (11th Cir. 2013) (citing *Tyler*, *supra*, at 663). Much like other petitioners on collateral review, Dumas asks the Court to assume that because the Supreme Court applied the newly announced rule in *Miller* to companion petitioner Jackson's collateral claim, the Court intended that rule to be retroactively applicable to all cases on collateral review. ECF No. 8 at 11. The undersigned does not agree.

The Supreme Court's decision to apply *Miller* to petitioner Jackson in the companion case before the Court on collateral review is not dispositive of the retroactivity issue, and certainly does not therefore require lower courts to infer that the Court intended *Miller* to be retroactive. *See Johnson*, 2013 WL 5663068, at *4; *see also People v. Carp*, 828 N.W.2d 685, 712-13 (Mich. Ct. App. 2012); *Commonwealth v. Cunningham*, 81 A.3d 1, 9-10 (Pa. 2013). In

18

*Johnson*, the Richmond division of this Court discussed the Supreme Court's ruling in *Padilla v. Kentucky*, 559 U.S. 356 (2010) (holding the failure to advise an alien defendant of immigration consequences of guilty plea constituted ineffective assistance of counsel). In that case, "the petitioner brought a collateral challenge to his conviction, and in reversing the decision below, the Supreme Court announced a new constitutional rule." *Johnson*, 2013 WL 5663068, at *4 (citing *Padilla*, 559 U.S. at 374-75). However, even though the petitioner in *Padilla* was before the Court on collateral review, the Court subsequently held that the new rule did not apply retroactively to other cases on collateral review. *See Chaidez v. United States*, 133 S. Ct. 1103, 1113 (2013). Therefore, just because the Court applied the new rule to Jackson, "this Court will not assume that the Supreme Court's application of a new constitutional rule to Jackson's collateral claim necessarily acts as a determination of the *Miller* rule's retroactivity." *Johnson*, *supra*, at *4; *accord Tyler*, *supra*, at 663. Because Dumas is before the Court on collateral review, and the undersigned has already determined that the *Miller* rule is a "new rule" for purposes of *Teague*, the Court proceeds to discuss why it would find that the new rule is not substantive, nor is it a watershed rule of procedure.

### 3. Under *Teague*, the new rule in *Miller* is not retroactively applicable on collateral review.

"Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310. Dumas' conviction became final over fifteen years before the new rule in *Miller* was announced. Because the undersigned would find that the new rule is neither substantive, nor a watershed rule of criminal procedure, the new rule in *Miller* does not apply retroactively to Dumas.

19

*i.* Miller *did not announce a new substantive rule, as defined by Teague.*

First, "[n]ew *substantive* rules generally apply retroactively." *Summerlin*, 542 U.S. at 351-52 (emphasis in original).   Substantive rules apply retroactively because such rules "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Id.* at 352 (citing *Bousley v. United States*, 523 U.S. 614, 620 (1998) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974))).  But that is not the case here.  It is undisputed that *Miller* does not affect or "not make criminal" the underlying conduct of Dumas' conviction.  Nor does it place Dumas' conduct "or persons covered by the statute [i.e. juveniles convicted of capital murder] beyond the State's power to punish." *Summerlin*, 542 U.S. at 352 (citations omitted).  It is also undisputed that, even if Dumas were convicted today as a juvenile of capital murder, after *Miller*, he could still face a punishment of life imprisonment without parole. *See Miller*, 132 S. Ct. at 2471 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* and *Graham*.  Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant circumstances—before imposing a particular penalty.").

Accordingly, *Miller* did not alter the substantive punishment for juveniles convicted of capital murder in Virginia.  In other words, back in 1997, Dumas did not "face[] a punishment that the law [no longer can] impose upon him." *Summerlin*, 542 U.S. at 351-52 (citations omitted).  Moreover, the explicit language of the Supreme Court's holding indicates that the rule is procedural, rather than substantive: "[I]t mandates only that a sentencer follow a certain *process* . . . ." *Miller, supra*, at 2471 (emphasis added); *see also Johnson, supra*, at *5.  In short, the ultimate outcome, or possible punishment, is the same both pre- and post-*Miller*: juveniles

convicted of capital murder in Virginia can be sentenced to life imprisonment without parole. *Miller* only changed the *process* by which the sentencing court must arrive at the juvenile's sentence; specifically, the sentencing court must consider the juvenile defendant's "youthful characteristics" when fashioning a sentence. *Id.* at 2469, 2471.

Because *Miller* did not categorically prohibit life imprisonment without parole for juveniles convicted of capital murder, and because it did not "place particular conduct or persons covered by the statute beyond the State's power to punish," *Summerlin, supra*, at 352, the undersigned would find that the rule announced in *Miller* is not a substantive rule as defined by *Teague* and *Summerlin*, and therefore, on that basis, it is not applicable retroactively to cases on collateral review. Rather, the undersigned would find that the *Miller* rule is procedural, but would still decline to apply the rule retroactively to Dumas, who is before the Court on collateral review, because the undersigned would find that the *Miller* rule is not a "watershed" rule of criminal procedure.

*ii. While* Miller *did announce a new procedural rule, it is not a "watershed" rule under Teague.*

New procedural rules "generally do not apply retroactively." *Summerlin*, 542 U.S. at 352 ("[Procedural rules] merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise."). "Because of this more speculative connection to innocence, we give retroactive effect to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (citing *Saffle, supra*, at 495) (quoting *Teague*, 489 U.S. at 311) (internal quotations omitted). The overwhelming majority of courts who have decided the issue determined that the new rule in *Miller* does not qualify as a watershed rule, because it is not "necessary to prevent an impermissibly large risk of an inaccurate conviction," and because it

21

does not "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton*, 549 U.S. at 418-19 ("*Gideon* [is] the only case that we have identified as qualifying under this exception . . . .").

In *Whorton*, the Supreme Court held that the new rule announced in *Crawford v. Washington*—out-of-court statements by witnesses that are testimonial are barred under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine the witnesses—was not a watershed new rule of procedure and thus not applicable retroactively on collateral review. *Id.* at 419-21 ("The *Crawford* rule is in no way comparable to the *Gideon* rule. The *Crawford* rule is much more limited in scope, and the relationship of that rule to the accuracy of the factfinding process is far less direct and profound . . . . [Moreover], it is apparent that the rule announced in *Crawford*, while certainly important, is not in the same category with *Gideon*. *Gideon* effected a profound and sweeping change."). So too, here, while an important procedural development in criminal law, the rule in *Miller* "simply lacks the primacy and centrality of the *Gideon* rule, and does not qualify as a rule that altered our understanding of the bedrock procedural elements essential to the fairness of a proceeding . . . ." *Id.* (citations and internal quotation marks omitted); *see also Johnson, supra*, at *6. Again, in short, the Supreme Court has only recognized one rule—a criminal defendant's right to assistance of counsel—to be so fundamental to the fairness of a criminal proceeding to qualify as a "watershed" procedural rule.

Here, *Miller* announced a new rule regarding procedures sentencing courts must follow before imposition of life imprisonment without parole for juveniles convicted of homicide, mainly, that the sentencing court consider their youthful attributes before imposing the harshest punishment available. First, this rule in no way implicates the accuracy of the juvenile's

underlying conviction; it simply is inapplicable to the first test for a watershed rule—necessary to prevent an impermissibly large risk of an inaccurate conviction—because the new rule solely impacts the sentencing procedure, after a conviction has been obtained. Nor does the new rule alter our most basic understanding of fairness in criminal proceedings, the second and last test for a new watershed rule. As discussed above, the Supreme Court has recognized only *Gideon* as qualifying as such a "sweeping rule" that "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Accordingly, the undersigned would find that the new rule announced in *Miller* is not a "watershed" procedural rule as defined by *Teague* and *Summerlin*, and therefore, the new rule does not apply retroactively to Dumas, who is before the Court on collateral review.

Lastly, the Respondent argues that the sentence was not "mandatory" as contemplated by *Miller* because the sentencing judge had discretion to suspend the sentence in whole or in part. ECF No. 7 ¶¶ 29-34. The Respondent buttresses this argument with an additional argument that because Dumas pled guilty and agreed to a "life without parole" sentence on the capital murder conviction, he was not denied "individualized sentencing" because he agreed to the particular sentence in the plea agreement. *Id.* at ¶¶ 35-38. The Court need not address either argument, however, because the Court has determined under the *Teague* analysis above that *Miller* does not apply retroactively to Dumas, who is before the Court on collateral review.

In conclusion, the undersigned would find that the *Miller* Court did announce a new rule of criminal procedure. The undersigned would also find that Dumas' conviction became final in 1997, and he now petitions the Court for collateral relief. However, under *Teague*, the undersigned would find that the new rule is not substantive, nor is the new rule a watershed procedural rule. Therefore, the undersigned recommends that the new rule in *Miller* not apply

retroactively to Dumas, and thus, his petition for habeas relief under section 2254 should be dismissed as time-barred by the statute of limitations.[4]

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 5, be **GRANTED** and Dumas' Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

---

[4] For a more complete discussion and analysis of courts that have decided the issue of the *Miller* decision's retroactivity on collateral review, *see Malvo v. Mathena*, 2:13-cv-375, ECF No. 19 at 16-25 (E.D. Va. Apr. 3, 2014).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record for the parties.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
May 13, 2014

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. David W. O'Brien
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Counsel for Petitioner

Ms. Kathleen B. Martin
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Counsel for Respondent

Fernando Galindo,
Clerk of Court

By: _____

Deputy Clerk
May _13_, 2014