IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARLIN MAURICE DUMAS,

    PETITIONER,

v.

                                                   **CIVIL ACTION NO. 2:13-cv-398**

HAROLD W. CLARKE, Director
Virginia Department of Corrections,

    RESPONDENT.

## REPORT AND RECOMMENDATION

    This matter is before the Court on Petitioner Marlin Maurice Dumas' ("Dumas") Petition for a Writ of Habeas Corpus ("Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and the Respondent's Motion to Dismiss, ECF No. 5. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 5, be **DENIED** and Dumas' Petition, ECF No. 1, be **GRANTED**.

## I. STATEMENT OF THE CASE

    On July 31, 1996, sixteen-year-old Marlin Maurice Dumas participated in a robbery in which Kelvin Sutton was murdered and Shanice Prater was severely injured. ECF No. 7, attach.

2. On May 19, 1997, a now seventeen-year-old Dumas pled guilty in the Circuit Court for the City of Norfolk to capital murder, malicious wounding, two counts of robbery, and two counts of abduction. *Id.* At the plea, the Circuit Court judge told Dumas that because he pled guilty to capital murder, he would be sentenced to life in prison without the possibility of parole. *Id.* at 9-10. At that sentencing hearing on July 18, 1997, the victim's mother testified, but Dumas' attorneys, per his instructions, did not present any mitigating evidence or offer any argument. Sentencing Transcript, *Commonwealth v. Dumas*, No. CR096004682-00 at 3-8 (Va. Cir. Ct. July 9, 1997). The Circuit Court sentenced Dumas to life in prison without parole for the capital murder conviction, plus a total of fifty years in prison for the other five convictions. *Id.* at 10-11. The judge imposed Dumas' sentence without explanation and did not reference Dumas' age or youth in any form or fashion.[1] *Id.*

Dumas did not directly appeal the conviction. On July 15, 1999, Dumas filed a Motion to Set Aside the Judgment, arguing that the trial court lacked jurisdiction to try him as an adult because neither of his parents had been served notice of his transfer hearing from Juvenile Court to Circuit Court. ECF No. 1 at 3; ECF No. 7 at 1. The motion was denied on February 11, 2000.

---

[1]

The Court: Mr. Dumas, anything you'd like to say, or can you give any reason why sentence should not be pronounced?

Dumas: No, sir.

The Court: On the charge of capital murder, I sentence you to life in prison. On the charge of malicious wounding, I sentence you to 20 years in prison. On each charge of robbery, I sentence you to ten years in prison. On each charge of abduction, I sentence you to five years in prison.

Mr. Evans: Commonwealth would have a motion on the two conspiracies if they were not already nol-prossed.

The Court: Come up, Mr. Sams, Mr. Evans. Motion granted to nol-pros.

Mr. Sams: No objection, Your Honor.

(Case concluded).

*Id.* Dumas initially appealed the denial, but later withdrew it.   *Id.* Dumas then filed a petition

for writ of habeas corpus to the Supreme Court of Virginia on May 24, 2000, again arguing that

the trial court lacked jurisdiction to try him as an adult because neither of his parents had been

served notice of his transfer hearing.  ECF No. 1 at 3; ECF No. 7 at 2.  The petition was refused

on December 7, 2000.  ECF No. 1 at 4; ECF No. 7 at 2.

On January 2, 2002, Dumas filed a federal writ of habeas corpus, in which he argued a

violation of due process stemming from the lack of notice previously mentioned, ineffective

assistance of counsel, and the emergence of new evidence regarding his guilty plea.  *Id.*  This

Court dismissed the petition as time-barred on November 15, 2002.[2]  ECF No. 1 at 12.  Dumas

subsequently filed a Writ of Mandamus to the Supreme Court of Virginia on March 31, 2008,

propounding the same due process argument previously mentioned.  *Id.* at 4.  On July 7, 2008,

the Mandamus was refused.  *Id.*  Dumas filed a second petition for a writ of habeas corpus to the

Supreme Court of Virginia on April 8, 2011, challenging the severity and constitutionality of his

sentence under *Graham v. Florida*, 560 U.S. 48 (2010) and *Roper v. Simmons*, 543 U.S. 551

(2005).  ECF No. 7 at 2.  The Supreme Court of Virginia dismissed the petition as successive and

time-barred on August 12, 2011.  *Id.*

On June 25, 2012, the United States Supreme Court held in *Miller v. Alabama*, 567 U.S.

460 (2012) that mandatory sentences of life without parole for homicide offenses committed by

juveniles, which are imposed by the trial court without giving individualized consideration to the

characteristics of the juvenile defendant, are unconstitutional under the Eighth Amendment.  The

Supreme Court held that children are different from adults with respect to both their culpability

and potential for rehabilitation, and thus "youth (and all that accompanies it)" must be

---

[2] Although the Respondent here stated that Dumas' Petition was dismissed on October 24, 2002, ECF No. 7 at 2, that was the date the United States Magistrate Judge filed his report and recommendation that the case be dismissed as time barred.  The Final Order dismissing the case was entered on November 15, 2002.

considered by sentencing courts before imposing a sentence of life without parole. 567 U.S. at 479. The Supreme Court further noted that, given the "diminished culpability" and "heightened capacity for change" of juveniles, it would "be uncommon" to sentence them to this "harshest possible penalty." *Id.*

On June 25, 2013, Dumas, by counsel, filed a motion seeking authorization from the United States Court of Appeals for the Fourth Circuit to file a second federal habeas petition in this Court, in light of the Supreme Court's ruling in *Miller*. ECF No. 7 at 2. The Fourth Circuit granted the motion and gave authorization to file on July 11, 2013. *Id.* at 2-3. Dumas subsequently filed the present habeas petition on July 19, 2013, alleging that his life sentence is unconstitutional. ECF No. 1 at 5. On October 29, 2013, the Respondent filed a Motion to Dismiss, a Rule 5 Answer, and a Brief in support of the Motion to Dismiss. ECF Nos. 5-7.

On May 13, 2014 the undersigned issued a Report and Recommendation that Respondent's Motion to Dismiss be granted and the habeas petition dismissed on the grounds that *Miller* could not be retroactively applied on collateral review. ECF No. 9. On June 20, 2014, the Court adopted and approved the Report and Recommendation and granted Respondent's Motion to Dismiss and denied and dismissed Dumas' Petition. ECF Nos. 11-12. On July 7, 2014, Dumas appealed this Court's decision to the United States Court of Appeals for the Fourth Circuit. ECF No. 13.

On January 25, 2016, the United States Supreme Court decided *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), in which the Court held that its decision in *Miller v. Alabama* provided petitioners with a new substantive constitutional rule that was retroactive on collateral review. The *Montgomery* Court emphasized that the Constitution required sentencing courts, before sentencing juvenile offenders to life in prison without parole, to consider the distinctive

4

attributes of youth when weighing a life sentence, and reiterated that while "a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified," the Court expected that such a sentence would only be imposed on "the rarest juvenile offenders, those whose crimes reflect permanent incorrigibility." 136 S. Ct. at 733-34.

On June 15, 2016, the Fourth Circuit remanded Dumas' appeal to this Court for further proceedings consistent with *Montgomery*. ECF Nos. 19-20. On July 8, 2016, the Chief United States District Judge referred the matter to the undersigned for a report and recommendation. ECF No. 22. On July 21, 2016, the undersigned ordered the parties to file supplemental briefs following *Montgomery* by September 6, 2016. ECF No. 24. On August 24, 2016, the Respondent filed a supplemental brief in which he argued that the Petition should be dismissed without prejudice so Dumas could exhaust his state court remedies. ECF No. 26 at 8. In his brief the Respondent represented:

> If the Court should determine that Dumas is not required to exhaust his remedies in state court, the respondent is constrained to acknowledge that the state court record of Dumas' plea and sentencing would not support a finding that the state court complied with the requirements for imposition of a life sentence without parole for capital murder set forth in *Miller/Montgomery*.

*Id.* at 8-9. Dumas had not yet filed a supplemental brief when on September 2, 2016, both parties filed a consent motion to stay Dumas' petition until the Supreme Court of Virginia decided *Jones v. Commonwealth*, a case considering whether a sentence of life without parole for a juvenile, as well as other sentences imposed at the same time for related offenses, were void *ab initio* in light of *Miller*. ECF No. 27. On September 6, 2016, the Court granted the parties' motion and set a briefing schedule following *Jones*. ECF No. 28. The Supreme Court of Virginia decided *Jones* on February 2, 2017, and held that Virginia's sentencing scheme does not

violate *Miller* and the Eighth Amendment because sentencing judges have discretion to suspend a juvenile's sentence for life in prison without parole. *Jones v. Commonwealth*, 795 S.E.2d 705, 718 (Va. 2017). Thereafter, the parties filed supplemental briefs on March 6, 2017. ECF Nos. 31-32. They filed their responses to the supplemental briefs on March 27, 2017, ECF Nos. 33-34, to which they replied on April 10, 2017, ECF Nos. 36-37.

The Respondent argued that Dumas' claim was simultaneously exhausted and defaulted because he cannot present his claim in state court in light of *Jones*, which determined that such claims would be considered untimely and successive. ECF No. 31 at 5. The Respondent claimed that the state Supreme Court's holding in *Jones* that Virginia's sentencing scheme did not violate *Miller/Montgomery* was a determination of state law left to state courts, and thus a holding to which this Court must defer. *Id.* at 6-8. Additionally, the Respondent contended that life sentences for capital murder are not "mandatory" since such a sentence can be suspended; therefore Dumas' sentence was not invalid under *Miller* or *Montgomery*. *Id.* at 8-10. Lastly, the Respondent contended that Dumas waived his claim under *Miller* and *Montgomery* because he entered a plea agreement that stipulated he would receive a life sentence and waived his right to appeal or challenge his conviction, and he chose not to present mitigating evidence at his sentencing.

On the other hand, Dumas argued that, because it was stipulated that the sentencing court did not consider Dumas' youth when sentencing him to life without parole, Dumas' rights under the Eighth Amendment were violated pursuant to *Miller* and *Montgomery*, and thus Dumas was required to be resentenced. ECF No. 32 at 5-9. Dumas further contended that he did not waive his instant claim since the trial judge specifically advised him he could appeal if he was sentenced to "more than the law allows" which, Dumas contends under *Miller* and *Montgomery*,

6

is exactly the case here. *Id.* at 9-11. Finally, Dumas also argued that his fifty year cumulative sentence for the other charges besides capital murder were unconstitutional under *Miller* and *Montgomery*, and were challenged in the original habeas petition, and thus also require resentencing. *Id.* at 11-19.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Timeliness

Section 2254 petitions are subject to a one-year statute of limitations and must be dismissed if they are filed later than one year after the conclusion of direct review of the conviction or the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A). Here, Dumas' present habeas petition, like his first habeas petition, was filed well outside the one-year statutory window. However, under 28 U.S.C. § 2244(d)(1)(c), untimely filings may be excused if the petitioner files within one year of the date the United States Supreme Court announced a newly recognized right made retroactively applicable to cases on collateral review. *Contreras v. Davis*, No. 1:13CV772, 2017 WL 372330, at *2 (E.D. Va. Jan. 26, 2017) (finding that even though the petitioner did not make the argument himself, that given "the new rule set forth in *Miller*, and made retroactive by *Montgomery*", the petition qualified as a belated commencement under 28 U.S.C. § 2244(d)(1)(c)). *Montgomery* held that *Miller* "announced a substantive rule of constitutional law" that was "retroactive to juvenile offenders whose convictions and sentences were final when Miller was decided." *Miller* was decided on June 25, 2012, and Dumas filed the instant petition on June 25, 2013. In addition, the Respondent did not contend the Dumas' petition was untimely. ECF No. 26 at 5 n.3. Consequently, the undersigned **FINDS** that Dumas' Petition was timely filed.

7

**B. Exhaustion and Procedural Default**

Before addressing the merits of a federal habeas petition, the preliminary inquiry is whether the petitioner appropriately exhausted his claims. Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). However, "[b]ecause the rule of exhaustion is one of comity and not of jurisdiction, it is to be applied with flexibility." *Patterson v. Leeke*, 556 F.2d 1168, 1170 (4th Cir. 1977) ("When the state's procedural machinery is rendered ineffective by overly sophisticated technicalities and self-imposed limitations, the federal court should not feel compelled to abstain.") (quoting *Hunt v. Warden*, 335 F.2d 936, 940-41 (4th Cir. 1964)). A federal habeas petitioner is excused from the exhaustion requirement if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

Here, the Respondent argued that Dumas' claim was exhausted and simultaneously defaulted because "it could not now be presented in state court because it would be barred as untimely under the Virginia statute of limitations…and as successive." ECF No. 31 at 5; *see also,* ECF No. 26 at 5-8. Although Dumas did not directly appeal the judgment of conviction rendered in the trial court, Dumas may still have the opportunity for federal habeas review. Under 28 U.S.C. §§ 2254(b)(1)(B)(i)-(ii), a petitioner is permitted to seek a writ of habeas corpus in federal court when state exhaustion is not actually or practically available. Based on the Supreme Court of Virginia's decision in *Jones*, a petitioner seeking resentencing under *Miller* or *Montgomery* "cannot be addressed by a motion to vacate filed years after the sentence became final." 795 S.E.2d 705, 720 (Va. 2017). Under Virginia law, a habeas petition challenging a conviction or sentence other than death must "be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code § 8.01-654(A)(2). Given that these deadlines have expired, Dumas is excused from exhaustion because he does not have an available state court process. *Malvo v. Mathena*, No. 2:13-cv-375; No. 2:13-cv-376, 2017 WL 2462188, at *2 (E.D. Va. May 26, 2017); *see also, Ross v. Fleming*, No. 6:13-cv-00034, 2016 WL 3365498, at *2 (W.D. Va. June 16, 2016).

In a recent Fourth Circuit decision, *Pinckney v. Clarke*, the Court reviewed the district court's grant of a petitioner's § 2254 petition for the state court's failure to consider his juvenile status and the other characteristics required under *Miller* and *Montgomery*. No. 16-7372, 2017 WL 2703613, at *1 (4th Cir. June 22, 2017). Pinckney argued in his state habeas petition that his sentencing was improper under *Miller* because "the trial court was required under Virginia state law to sentence him to life in prison without the possibility of parole." *Id.* at *2. "Pinckney did

not argue in the alternative that if the trial court did have discretion to impose a sentence less than life imprisonment without parole, its consideration of the evidence was still insufficient to satisfy *Miller*'s requirements." *Id.* Pinckney raised the latter argument for the first time in a supplemental brief in federal court to the United States District Judge upon review of the parties' objections to the United States Magistrate Judge's Report and Recommendation. *Id.* at *4. The Court vacated the district court's decision in part because the petitioner "failed to place a Virginia court on notice of a *Miller* claim regarding the sufficiency of the trial court's consideration of his youth and its attendant characteristics", therefore he "failed to exhaust that claim in state court and the district court erred by basing its grant of relief upon it." *Id.* at *8.

    *Pinckney* is distinguishable from Dumas' case. Pinckney filed his state habeas petition soon after the Supreme Court decided *Miller* so he had an opportunity to make both arguments as to why his sentence was invalid, but chose to argue only one. On the other hand, Dumas filed a § 2254 petition in this court ten years before *Miller* and is presently before the Court because he has been authorized by the Fourth Circuit to file a second federal habeas petition in this Court in light of *Miller*. Therefore, the undersigned **FINDS** that Dumas is excused pursuant to 28 U.S.C. § 2254(b)(1)(B) from exhausting his state remedies because there is no available avenue of state habeas relief.

## C. Application of *Miller* and *Montgomery* to Dumas' Case

    Respondent argued that since Virginia courts can suspend life without parole sentences, Virginia's sentencing scheme is discretionary and *Miller* and *Montgomery* do not apply to Dumas' sentence as they only apply to mandatory sentencing schemes.[3] ECF No. 31 at 7-10.

---

[3] The Respondent initially conceded that if the Court found that Dumas was not required to exhaust his state court remedies, "Dumas' plea and sentencing would not support a finding that the state court complied with the requirements for imposition of a life sentence without parole for capital murder set forth in *Miller/Montgomery*." ECF No. 26 at 8-9. However, following *Jones*, the Respondent argued that *Miller* and *Montgomery* did not apply to

The Respondent contended that this Court "is bound by the Supreme Court of Virginia's interpretation of Virginia law", so the Court should be bound by the decision in *Jones v. Commonwealth*, which concluded that *Miller* and *Montgomery* were not violated in Virginia because a mandatory life without parole sentence for a capital murder conviction is not really mandatory since the court retains discretion to suspend it. *Id.* at 5. Virginia's statute, Respondent argued, is therefore unlike the mandatory sentencing schemes in Alabama and Louisiana, which the United States Supreme Court found constitutionally defective. *Id.* at 8 (citing 795 S.E.2d 705, 720 (Va. 2017)). Respondent's argument is mistaken. For the following reasons, the undersigned concludes that *Miller* and *Montgomery* apply to Dumas' sentence.

The Supreme Court in *Miller* held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. However, "[a] thorough review of *Miller* and *Montgomery* reveals that the Eighth Amendment right announced therein is not possessed solely by those juveniles who are fortunate enough to be sentenced in states with mandatory penalty schemes." *Malvo*, 2017 WL 2462188, at *5. In *Montgomery*, the Supreme Court concluded that "*Miller* determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.'" 136 S. Ct. at 734 (quoting *Miller*, 132 S. Ct. at 2469). The Court said that "*Miller*'s substantive holding [is] that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." *Id.* at 735. "Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" *Id.* at 734. If *Miller* only applied to juveniles who were

Dumas and that he waived his right to challenge his sentence under *Miller* and *Montgomery*, so the undersigned addresses both arguments.

sentenced in mandatory scheme states, then the true holding of the Supreme Court could not be carried out as juveniles in discretionary states whose crimes did not reflect irreparable corruption would still be sentenced to life without parole. *See, Malvo*, 2017 WL 2462188, at *5.

In point of fact, whether a life without parole sentence is mandatory or discretionary does not determine whether a juvenile has been subjected to a violation of the Eighth Amendment when he is sentenced to life in prison without parole. The Supreme Court has made clear that the Eighth Amendment is violated when such a sentence is imposed on a juvenile without the sentencing court taking into consideration the ramifications of "youth (and all that accompanies it)." *Miller* 567 U.S. at 479. Although the state sentencing schemes reviewed by the Supreme Court in *Miller* and *Montgomery* were mandatory, "[i]t seems clear that the Supreme Court discussed those mandatory penalty schemes to explain how they categorically denied to those juveniles an Eighth Amendment right that is possessed by all juveniles, regardless of where they are sentenced." *Malvo*, 2017 WL 2462188, at *6. Where "mandatory penalty schemes create a *per se* violation of the Eighth Amendment right announced in *Miller* because they preclude the possibility of an 'individualized sentencing,' to which all juveniles are entitled", discretionary schemes are still applicable to *Miller* and *Montgomery*, but require a determination as to whether the juvenile's life without parole sentence comports with the Supreme Court's requirements. *Id.*

In *Tatum v. Arizona*, the Supreme Court looked at whether *Miller* applied to Arizona's sentencing scheme. 137 S. Ct. 11 (2016). The Arizona Court of Appeals had previously held that *Miller* did not apply to juveniles sentenced to life without parole because Arizona's sentencing scheme was not mandatory. *State v. Tatum*, No. 2 CA-CR 2014-0460-PR, 2015 WL 728080, at *2 (Ariz. Ct. App. Feb. 18, 2015) (concluding that since *Miller* "held only that a *mandatory* life sentence violated the Eighth Amendment and expressly declined to address any

argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles…We decline to extend *Miller's* holding further than the Supreme Court was willing to extend it.") (emphasis in original). The Supreme Court vacated the Arizona Court of Appeals' decision and remanded the case "for further consideration in light of *Montgomery v. Louisiana.*" *Tatum*, 137 S. Ct. at 11. Even though the majority opinion did not explain the Court's decision, Justice Sotomayor in her concurrence reiterated:

> the Eighth Amendment requires more than mere consideration of a juvenile offender's age before the imposition of a sentence of life without parole. It requires that a sentence decide whether the juvenile offender before it is a child "whose crimes reflect transient immaturity" or is one of "those rare children whose crimes reflect irreparable corruption" for whom a life without parole sentence may be appropriate. There is thus a meaningful task for the lower courts to carry out on remand.

*Id.* at 13. Given that the Supreme Court vacated the lower court's decision in spite of Arizona's discretionary sentencing scheme, the Supreme Court has clarified that the true intent of *Miller* and *Montgomery* concerns the requirement that courts specifically consider the ramifications of youth before sentencing a juvenile to life in prison without parole, and thus goes beyond considerations of whether the state where the juvenile was sentenced followed a mandatory or a discretionary sentencing scheme.

Furthermore, this Court is not bound by the Supreme Court's interpretation of Virginia law in *Jones* as it applies to Dumas. The state court is not entitled to the same deference as it is when a federal court reviews a state habeas court's decision involving the same petitioner. In *Pinckney*, the Fourth Circuit in dicta stated that "Pinckney's objection to the magistrate judge's conclusion that a federal court must defer to a state court's conclusions and findings instead of conducting de novo review is baseless, and the district court correctly rejected it. Deference, as

opposed to de novo review, is precisely what § 2254(d) requires."[4]  2017 WL 2703613, at *8. Here, unlike in *Pinckney*, the Court is not reviewing the reasonableness of a state court's decision denying Dumas' claim in light of *Miller*, but is reviewing a second habeas petition that he was authorized to file following *Miller*. Therefore, the present analysis is not bound by *Jones*. Dumas filed a § 2254 petition in federal court where he challenged his sentence under interpretations of the Eighth Amendment from two cases from the Supreme Court of the United States, so this Court should review whether the state court engaged in "an *unreasonable application of federal law*." *See, Williams v. Taylor*, 529 U.S. 362, 410 (2000) (emphasis in original). Given that the Court should look to federal precedent, the Supreme Court's guidance in *Tatum* is particularly persuasive where the Court vacated a decision with similar reasoning to *Jones*. For the foregoing reasons, the undersigned **FINDS** that *Miller* and *Montgomery* apply to Dumas' case. And, having so found, the undersigned **FINDS** that Dumas' Eighth Amendment rights were violated when the sentencing court failed to consider Dumas' youth, and all that accompanied it, when he sentenced the juvenile to life in prison without parole.[5]

## D. Waiver of *Miller* and *Montgomery* Challenge

The Respondent also proffered three arguments as to why Dumas waived his right to challenge his sentence under *Miller* and *Montgomery*. First, the Respondent argued that Dumas waived his right to challenge his sentence under the Eighth Amendment because he entered into a guilty plea agreement with a stipulated sentence of life in prison. ECF No. 31 at 10. Second,

---

[4]  The Fourth Circuit went on to say that "[w]hether a sentencing statute is mandatory or instead allows for judicial discretion in setting the punishment is a question of state law." 2017 WL 2703613, at *8. Consequently, a federal court cannot review a claim about an error of state law. *Id.* However, Dumas did not challenge *Jones*' holding that Virginia has a mandatory sentencing scheme, but claimed that *Miller* and *Montgomery* apply regardless. Thus, federal habeas review is still appropriate.

[5]  Of course, neither *Miller* nor *Montgomery* were the law of the land when Dumas was originally sentenced, so the sentencing court had no basis to believe that he was required to take Dumas' youth into consideration when imposing sentence.

the Respondent contended that at his guilty plea, Dumas affirmatively and voluntarily waived his rights to appeal his conviction or challenge it under the United States Constitution. *Id.* Third, the Respondent argued that, since Dumas did not proffer at his sentencing mitigation evidence of his "youth and attendant characteristics" as discussed in *Miller* and *Montgomery*, he was never denied a "constitutionally required opportunity." *Id.* at 11. For the following reasons, the undersigned finds none of the Respondent's arguments convincing.

First, enforcing Dumas' guilty plea to a stipulated life sentence would be unenforceable on grounds of public policy. "A plea agreement is 'essentially a contract between an accused and the government' and is therefore subject to interpretation under the principles of contract law." *United States v. Davis*, 689 F.3d 349, 353 (4th Cir. 2012) (quoting *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011)). "[A] contract will be enforced unless the interest promoted by its enforcement is outweighed by the public policy harms resulting from enforcement." *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cty., N.C.*, 149 F.3d 277, 280 (4th Cir. 1998). Although "in consideration of the ubiquity of plea agreements in our criminal justice system, the special public interest in enforcing these plea agreement provisions is quite large", "it is doubtful that there exists a public policy more foundational than those safeguarding the constitutional due process by which the state deprives citizens of their life and liberty." *Malvo*, 2017 WL 2462188, at *12. "The Supreme Court has decided that the *Miller* rule is a substantive rule of constitutional law that is so fundamental that it requires retroactive application." *Id.* "[I]t is clear that a refusal to enforce" sentences stipulating to life without parole "will further the public policy discussed in *Miller* and *Montgomery*." *Id.* Therefore, enforcement of Dumas' stipulated life sentence is unenforceable on grounds of public policy

Likewise, the Respondent's second argument fails because it squarely negates the

15

substantive Eighth Amendment right announced in *Miller* and expanded retroactively in *Montgomery*. Although a criminal defendant can waive his right to appeal or the Eighth Amendment right in *Miller*, "[t]he question for this Court is whether such a waiver took place." *Id.* at *10. "Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement, our analysis of the plea agreement or breach thereof is conducted with greater scrutiny than in a commercial contract." *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997). "The contractual waiver of a constitutional right must be a knowing waiver, must be voluntarily given, and must not undermine the relevant public interest in order to be enforceable." *Lake James Cmty. Volunteer Fire Dep't, Inc.*, 149 F.3d at 280.

Here, Dumas did not have the knowledge to voluntarily waive a constitutional challenge of his sentence because neither the written plea agreement nor the verbal guilty plea hearing contained provisions which would invoke a knowing, voluntary waiver, and *Miller*'s Constitutional right was unbeknownst to the Circuit Court and to Dumas when he pled guilty. As this Court said in *Malvo*, "[t]here is no evidence in the record to suggest that Petitioner was aware of the existence of this right, much less that he intended to relinquish or abandon it." 2017 WL 2462188, at *10. Therefore, Dumas could not knowingly and voluntarily waive it.

Additionally, Dumas did not waive his right to appeal an unlawful sentence, as the Circuit Court judge acknowledged when he asked during the colloquy: "[do you understand that] the only thing you can appeal by pleading guilty is if I sentence you to more than the law allows?" to which Dumas replied affirmatively. ECF No. 7, attach. 2 at 8. As the Supreme Court has now made clear, sentencing a juvenile to life in prison without parole, without making an individualized determination of the juvenile's youth and attendant characteristics, is not a

16

lawful sentence.

Furthermore, the Court does not have to analyze whether Dumas waived his right to appeal because even if he did, the instant Petition is not an appeal. A "[p]etitioner's waiver of his right to an appeal does not also operate as a waiver of his right to collaterally attack his sentence through a § 2254 motion." *Malvo*, 2017 WL 2462188, at \*9 (finding that a § 2254 petition was a collateral attack and not an appeal). "[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Although Dumas could have waived his right to a collateral attack, the Respondent did not make that argument. Even if the Respondent had, Dumas' ability to file a § 2254 motion was not contemplated in his guilty plea agreement. Plea Agreement, *Commonwealth v. Dumas*, No. 96004682-00 (Va. Cir. Ct. May 19, 1997). Further, Dumas could not have knowingly and voluntarily waived his right because he was unaware of the right from *Miller*. Therefore, the Respondent's second argument cannot stand because Dumas could not knowingly waive a right that did not exist when he pled guilty, and the waiver of such right was not included at his guilty plea hearing and in his plea agreement.

Lastly, the Respondent's third argument that Dumas waived his right to bring his claim because he failed to provide mitigating evidence is misplaced. As explained *supra*, at the time of his sentencing in 1997, Dumas was unaware of his rights under *Miller* to have a sentencing court consider his youth and attendant characteristics when imposing a sentence, so it would have been impossible for him to know that he needed to put on such evidence for the Court to consider when he was sentenced. Additionally, as the Respondent acknowledged in his first argument, Dumas entered a plea agreement requiring a mandatory life in prison sentence, so it would have

17

been pointless for him to even present mitigating evidence knowing it would have no impact on his sentence.[6] Thus, his failure to do so should not result in waiver of his claim. For these reasons, the undersigned **FINDS** that Dumas did not waive his right to challenge his sentence under *Miller* or *Montgomery*.

### E. Dumas' Sentence of Life without Parole

*Montgomery* clarified that *Miller* "did more than require a sentence to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of the 'distinctive attributes of youth.'" 136 S. Ct. at 734. The Supreme Court went on to say that "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not." *Id.* at 735.

The Respondent has previously conceded that "[n]o reference was made to Dumas's age by counsel" and that "Dumas made no statement to the court in allocution and the court made no comments when it imposed sentence." ECF No. 26 at 4. In addition, the Respondent acknowledged that if the Court found that Dumas was not required to exhaust his state court remedies, "Dumas' plea and sentencing would not support a finding that the state court complied with the requirements for imposition of a life sentence without parole for capital murder set forth in *Miller/Montgomery*." *Id.* at 8-9. Following the Supreme Court of Virginia's most recent *Jones* opinion, the Respondent argued that *Miller* and *Montgomery* did not apply to Dumas at all, and that he waived his right to challenge his sentence under *Miller* and *Montgomery*. However, the Respondent did not claim that if *Miller* and *Montgomery* applied to Dumas that the Circuit

---

[6] As Dumas pointed out, he agreed to a sentence of life in prison without parole in order to avoid a possible death sentence, which still was a possibility for juvenile defendants prior to the Supreme Court's decision eight years later in *Roper v. Simmons*, 543 U.S. 551 (2005). ECF No. 32 at 5.

Court's sentencing for his capital murder conviction satisfied the Supreme Court's requirements for sentencing juveniles to life in prison without parole.

At Dumas' sentencing, the victim's mother testified and Dumas' attorneys, per his instructions, did not present any mitigating evidence or offer any argument. Sentencing Transcript, *Commonwealth v. Dumas*, No. CR096004682-00 at 3-8 (Va. Cir. Ct. July 9, 1997). After the Commonwealth's argument, the Circuit Court gave Dumas an opportunity to make a statement or provide a reason why the sentence should not be pronounced, which Dumas declined. *Id.* at 10. The Circuit Court then sentenced Dumas to life in prison without parole for the capital murder conviction, plus a total of fifty years in prison for the other five convictions without explanation. *Id.* Given the brevity of the Circuit Court's comments before sentencing Dumas, there is no evidence to show that Dumas' "youth and attendant characteristics" were considered in determining he should be sentenced to life without parole. *Montgomery*, 136 S. Ct. at 735. Therefore, the Circuit Court's sentencing of Dumas' capital murder conviction to life in prison without parole does not satisfy the Supreme Court of the United States' decisions in *Miller* and *Montgomery*, and Dumas' capital murder sentence should be vacated and his case remanded to the Circuit Court for resentencing.

## F. Dumas' Sentence for Malicious Wounding, Robbery, and Abduction

Finally, Dumas argued that his consecutive fifty-year sentence is also unconstitutional under *Miller* and *Montgomery*. ECF No. 32 at 11-18; ECF No. 37 at 4-8. Citing decisions from six state Supreme Courts, the Seventh and Ninth Circuits, and a District Court in this this district, Dumas argued that a lengthy term of years sentence without parole is a *de facto* life sentence which also was imposed with consideration of Dumas' youth, and thus also requires resentencing under *Miller*. ECF No. 32 at 12-13 (citing *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016);

*Moore v. Biter*, 725 F.3d 1184, 1191 (9th Cir. 2013); *Contreras v. Davis*, No. 1:13CV772, 2017 WL 372330, at *2 (E.D. Va. Jan. 26, 2017); *Henry v. State*, 175 So. 3d 675, 679-80 (Fla. 2015); *Casiano v. Comm'r of Corr.*, 115 A.3d 1031, 1044 (Conn. 2015); *Brown v. State*, 10 N.E. 3d 1, 7-8 (Ind. 2014); *Bear Cloud v. State*, 334 P.3d 132, 141-42 (Wyo. 2014); *State v. Null*, 836 NW 2d 41, 71 (Iowa 2013); *People v. Caballero*, 282 P.3d 291, 294-95 (Cal. 2012)).[7]  Dumas contended that "[i]n Virginia capital murder includes murder connected to robbery or kidnapping" so "[t]hese separate crimes may themselves be punishable by harsh sentences up to life imprisonment." *Id.* at 15 (citing *Ross v. Fleming*, No. 6:13-cv-00034, 2016 WL 3365498 (W.D. Va. June 16, 2016); *McLean v. Clarke*, No. 2:13-cv-00409, 2014 WL 5286515 (E.D. Va. 2014); *Jones v. Commonwealth*, 795 S.E.2d 705 (Va. 2017)).  Dumas argued that he should be resentenced on his entire sentence because unlike a defendant who received a "categorical" life sentence for multiple convictions, his behavior was part of one criminal episode and one plea agreement.  He also claimed the Circuit Court had no need to fully consider his sentencing for the malicious wounding, robbery, and abduction convictions because he was sentenced to life in prison without parole for the capital murder conviction.

Conversely, Respondent contended that since the fifty-year sentence concerns non-homicide convictions, the proper vehicle for resentencing would be under *Graham v. Florida*, 560 U.S. 48 (2010), and not *Miller*.  ECF No. 34 at 5-15.  Respondent also maintained that this argument is not properly before the Court because Dumas never raised the issue until the supplemental briefing, and even if he did, *Graham* does not apply to lengthy term of years sentences as the Fifth and Sixth Circuits as well as the Supreme Court of Virginia have decided.

---

[7] Although not cited by Dumas, the New Jersey Supreme Court has agreed with the conclusion of these courts. *State v. Zuber*, 152 A.3d 197 (N.J. 2017) (resentencing two juvenile defendants who were originally sentenced to 110 and 75 years in prison respectively).

20

*Id.* at 7-8 (citing *United States v. Walton*, 537 F. Appx 430 (5th Cir. 2013); *Bunch v. Smith*, 685 F.3d 546, 552 (6th Cir. 2012); *Vasquez v. Commonwealth*, 781 S.E.2d 920 (Va. 2016), *cert denied*, 137 S. Ct. 568 (2016)).[8]   Respondent argued that the Virginia cases cited by Dumas "involved life-sentences for non-homicide convictions and, thus, were arguably governed by *Graham*, which has not been found to apply to non-life sentences such as those imposed on Dumas." *Id.* at 7.

Almost all of the cases the parties cited address the issue of whether a defendant who was sentenced to a lengthy term of years was subject to a *de facto* life sentence such that it requires the court to resentence under *Miller* or *Graham*. *See, McKinley*, 809 F.3d 908; *Moore*, 725 F.3d at 1191; *Walton*, 537 F. Appx 430; *Bunch*, 685 F.3d at 552; *Contreras*, 2017 WL 372330; *McLean*, 2014 WL 5286515; *Vasquez*, 781 S.E.2d 920; *Henry*, 175 So. 3d at 679-80; *Casiano*, 115 A.3d at 1044; *Brown*, 10 N.E. 3d at 7-8; *Null*, 836 NW 2d at 71; *Caballero*, 282 P.3d at 294-95.   Although the parties have demonstrated a split of authority on this question, it is not necessary to answer it to resolve the instant matter.   In each of these cases, addressing the issue of whether the sentence was a *de facto* life sentence was necessary because it affected whether the court would order resentencing.   On the other hand, Dumas was sentenced to life in prison without parole for the capital murder conviction, plus a total of fifty years in prison for his five other convictions.   As previously explained, *supra* II.E., Dumas should be resentenced on his life without parole sentence.   Therefore, the relevant question is not whether Dumas should be resentenced at all, but rather whether the Circuit Court should resentence Dumas on his entire sentence or solely on the life in prison portion for his capital murder conviction.

---

[8]  The Court also notes that *State v. Brown*, 118 So. 3d 332 (La. 2013), similarly concluded that *Graham* did not apply to a defendant's sentence of life in prison without parole and 40 years in prison to be run consecutively to the life sentence for one count of aggravated kidnapping and four counts of armed robbery.

Narrowing the issue, only three of the cases the parties cited and that the Court was able to find involved resentencing defendants who were originally sentenced to a term of life in prison without parole and an additional term of years for their other convictions. Of these, the undersigned is most persuaded by the Supreme Court of Wyoming's reasoning in *Bear Cloud v. State*, a case involving a juvenile sentenced to life in prison for first-degree murder, plus 20-25 years for aggravated burglary to be served consecutively with the murder conviction, and 20-25 years for conspiracy to commit aggravated burglary to be served concurrently with the murder conviction.[9] 334 P.3d at 135. The defendant appealed his conviction to the Supreme Court of Wyoming, which affirmed, so he appealed to the United States Supreme Court. *Id.* Once the Supreme Court decided *Miller*, it vacated the case and remanded the judgment to the Supreme Court of Wyoming. *Id.* The Supreme Court of Wyoming remanded the case for resentencing for only the murder conviction, but after the district court resentenced him, the defendant appealed again to the Wyoming Supreme Court, arguing that he should have been resentenced on all of his convictions. *Id.* at 135-36.

This time, the Wyoming Supreme Court held that the defendant was entitled to resentencing for all of his convictions in order to be consistent with its holding in *Sen v. State*, 301 P.3d 106, 110 (Wyo. 2013), which held "because Sen's sentence of life without the possibility of parole may have impacted the sentencing decisions with respect to his conspiracy

---

[9] The other two cases were *Ross v. Fleming*, No. 6:13-cv-00034, 2016 WL 3365498 (W.D. Va. June 16, 2016) and *State v. Brown*, 118 So. 3d 332 (La. 2013). In *Ross*, the Court ordered that a defendant sentenced to two terms of life imprisonment and eight years to run consecutively for capital murder, robbery, and two counts of use of a firearm only be resentenced on his two life in prison sentences. 2016 WL 3365498, at *2. However, the court did not provide a rationale for not allowing the Circuit Court to consider the eight years in prison as well. In *Brown*, the Supreme Court of Louisiana held that *Graham* did not apply to the defendant's sentence of life in prison without parole and 40 years in prison to be run consecutively to the life sentence for one count of aggravated kidnapping and four counts of armed robbery. 118 So. 3d at 342. This case is distinguishable from Dumas as it involved separate instances of armed robbery, and not actions that stemmed from one criminal episode.

and aggravated burglary convictions, we vacate those sentences and remand for resentencing on all counts." *Id.* at 136, 141. The Court noted that "[b]ecause a district court's 'original sentencing intent may be undermined by altering one portion of the calculus,' an appellate court when reversing one part of a defendant's sentence 'may vacate the entire sentence...so that, on remand, the trial court can reconfigure the sentencing plan...'" *Id.* at 141 (quoting *Pepper v. United States*, 562 U.S. 476, 507 (2011)). Thus, the Court concluded that "[w]hen the United States Supreme Court vacated the judgment in *Bear Cloud I*, it wiped the slate clean" such that it decided to "remand for the district court to consider the entire sentencing package." *Id.*

Like with *Bear Cloud*, Dumas' sentence should be considered in its entirety. Dumas' convictions arose from one criminal episode and one plea agreement, and the Circuit Court may not have fully considered the sentences for malicious wounding, robbery, and abduction because of the fact that Dumas received a mandatory sentence of life in prison without parole for capital murder. Remanding for resentencing only on the capital murder conviction would unnecessarily tie the hands of the Circuit Court in making an appropriate sentencing decision, as the court would be weighing the considerations of Dumas' youth in light of *Miller* and *Montgomery* without being able to reflect such considerations in his total sentence as a practical matter. This is so because Dumas would still be required to serve fifty years in addition to whatever sentence the court imposed for the capital murder conviction. A resentence under such terms would provide meaningless relief as a practical matter, and would run counter to the Supreme Court's intent expressed in *Miller* that "the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth'" as "sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption,'" and not for "juvenile offenders whose crimes reflect the transient immaturity of youth."

23

*Montgomery*, 136 S. Ct. at 734 (citations omitted).  In light of this, the Supreme Court has required courts to resentence juveniles and hold "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors...to separate those juveniles who may be sentenced to life without parole from those who may not." *Id.* at 735.  To truly accomplish this, the Circuit Court must be able to consider Dumas' sentence in its entirety.[10]  Therefore, Dumas' resentencing should also apply to his convictions for malicious wounding, robbery, and abduction.

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 5, be **DENIED** and Dumas' Petition, ECF No. 1, be **GRANTED**.  The undersigned **RECOMMENDS** Dumas' sentence in the Circuit Court for the City of Norfolk be **VACATED** and that his case be **REMANDED** to the Circuit Court for disposition on his conviction in accordance with *Miller* and *Montgomery*.

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Dumas is notified that:

1.  Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R.

---

[10] Of course, as the Supreme Court made clear, a sentence of life without parole is not categorically prohibited, and if circumstances warrant based on "incorrigibility" the Circuit Court is free to impose such a sentence.  But *Miller* and *Montgomery* require that such a sentence be issued only after careful deliberation and full consideration of Dumas' youth at the time of these offenses, and all of the attendant characteristics of his youth. As the Supreme Court has directed, the Eighth Amendment demands nothing less.

Civ. P. 72(b).

2. The Chief United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record for the parties.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 14, 2017